# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

PROTECTIVE LIFE INSURANCE
COMPANY,

Plaintiff,

v.

SHEILA I. KRIDNER, KAREN M.
ROBERTS, LISA A. CURTIS, and
CYNTHIA L. GOERGEN,

Defendants.

Civil No. 12-582 (JRT/JJG)

**MEMORANDUM OPINION AND
ORDER ON ATTORNEYS' FEES
AND COSTS**

---

Andrew J. Budish and James M. Jorissen, **LEONARD, O'BRIEN, SPENCER, GALE & SAYER, LTD.**, 100 South Fifth Street, Suite 2500, Minneapolis, MN 55402, for plaintiff.

Lauris A. Heyerdahl, Melissa Linn Hagstrum, and Paul R. Smith, **LARKIN HOFFMAN DALY & LINDGREN LTD.**, 7900 Xerxes Avenue South, Suite 1500, Minneapolis, MN 55431, for defendant Sheila I. Kridner.

Glenn P. Bruder, **MITCHELL BRUDER & JOHNSON**, 5001 American Boulevard West, Suite 670, Bloomington, MN 55437, for defendants Karen M. Roberts, Lisa A. Curtis, and Cynthia L. Goergen.[1]

In March 2012, Plaintiff Protective Life Insurance Company ("Protective Life") filed an interpleader action against Defendants, the ex-wife and daughters of Protective Life's insured, regarding the proceeds of a life insurance policy. Protective Life

---

[1] On January 23, 2013 Glenn Bruder filed a motion to withdraw as counsel for Defendants Karen M. Roberts, Lisa A. Curtis, and Cynthia L. Goergen (the "Daughters"). (Mot. for Withdrawal of Counsel, Jan. 23, 2013, Docket No. 42.) United States Magistrate Judge Jeanne J. Graham granted the motion and directed the Daughters to obtain substitute counsel or notify the Court of their intention to proceed *pro se*. (Order, Feb. 28, 2013, Docket No. 50.)

deposited the policy's proceeds with the Court and has been discharged of liability for the funds.  Protective Life now seeks attorneys' fees and costs in the amount of $10,665 to be paid out of the life insurance policy's proceeds.  Because some of the fees requested by Protective Life are unreasonable, the Court will award Protective Life $6,573.05 in reasonable attorneys' fees and costs to be paid out of the policy's proceeds previously deposited with the Court.

## BACKGROUND

## I.    THE POLICY

This case arises out of competing claims to the proceeds of a $105,000 life insurance policy ("the Policy") issued by United Investors Life ("United Investors")[2] to Thomas Kridner on May 28, 1983.  (Compl. ¶ 10, Mar. 6, 2012, Docket No. 1.)  The Policy named "Sheila I. Kridner, spouse" as the sole beneficiary.  (*Id.*)  Thomas and Sheila Kridner ("Kridner") divorced in Idaho on April 23, 1986, but the beneficiary listing on the Policy was never changed.  (Aff. of Lauris A. Heyerdahl, Ex. A, Aug. 3, 2012, Docket No. 38; Compl. ¶ 13.)

Thomas Kridner died in California on July 29, 2011.  (Heyerdahl Aff., Ex. C; Compl. ¶ 12.)  On August 29, 2011, Kridner submitted a claim to United Investors for the Policy's proceeds.  (Compl. ¶ 14, Ex. B.)  On the claim form, Kridner indicated that she was Thomas Kridner's "wife."  (*Id.*, Ex B.)  On November 18, 2011, Thomas Kridner's

---

[2] On January 3, 2012, Plaintiff Protective Life, the parent company of United Investors Life, "became responsible for paying properly payable death benefits" to beneficiaries of policies issued by United Investors.  (Compl. ¶ 9, Mar. 6, 2012, Docket No. 1.)

daughters – Karen Roberts, Lisa Curtis, and Cynthia Goergen (collectively, "the Daughters") – submitted a claim to United Investors, each declaring entitlement to one-third of the Policy's proceeds.  (*Id.* ¶ 15, Ex. C.)

On February 9, 2012, Protective Life wrote a letter to Kridner and the Daughters requesting that the claimants attempt to reach an agreement as to the distribution of the proceeds.  (*Id.*, Ex. D.)  In the letter, counsel for Protective Life stated "[i]f you cannot reach an agreement between yourselves as to how the policy proceeds should be paid, my client will have no choice but to interplead the policy proceeds into court."  (*Id.*, Ex. D at 1.)  Kridner and the Daughters were unable to reach such an agreement.  (*Id.*, Exs. E-F.)  Kridner claimed entitlement to the Policy's proceeds as its named beneficiary, (*id.*, Ex. E), and the Daughters claimed rights to the policy because they believed California probate law prevented any non-probate transfers of their father's assets to Kridner, his former spouse, (*id.*, Ex. F.)  Protective Life wrote a letter to the Daughters' counsel on March 2, 2012, stating that the California law relied on by the Daughters in support of their claim to the Policy's proceeds "has no applicability to the life insurance policy insuring Mr. Kridner."  (Second Aff. of Andrew J. Budish, Ex. A, Aug. 17, 2012, Docket No. 40.)

## II.    PROCEDURAL HISTORY

On March 6, 2012, Protective Life commenced an interpleader action pursuant to 28 U.S.C. § 1335(a), asking the Court to adjudicate the correct beneficiary of the Policy's proceeds.  (Compl.)

Protective Life claims that, after filing the complaint, it attempted to work with counsel for both Kridner and the Daughters to obtain a stipulation to deposit the funds into the Court.  (Aff. of James M. Jorissen ¶ 2, July 20, 2012, Docket No. 34.)  Kridner did not stipulate to the deposit of funds, but instead filed an answer and a counterclaim against Protective Life, alleging that Protective Life breached the Policy by not paying the Policy's proceeds to Kridner.  (Answer & Countercl., Apr. 26, 2012, Docket No. 5.)  On May 4, 2012, counsel for Kridner offered to dismiss Kridner's counterclaim and stipulate to Protective Life's dismissal upon deposit of the funds with the Court. (Heyerdahl Aff., Ex. F.)  Protective Life responded with a proposed stipulation, to which Kridner's counsel apparently never agreed.  (Second Budish Aff., Ex. B.)

On May 17, 2012, Protective Life brought a motion to dismiss Kridner's counterclaim and also brought a motion to deposit funds with the Court.  (Mot. to Dismiss, May 17, 2012, Docket No. 16; Mot. to Deposit Funds, May 17, 2012, Docket No. 19.)  None of the Defendants opposed the motion to deposit funds, and the Court granted the motion on May 30, 2012.  (Order, May 30, 2012, Docket No. 24.)  The Court also ordered that Protective Life could "apply to this Court to seek reimbursement of its attorneys' fees and costs incurred in this action and to recover the same from the funds deposited into the registry of Court."  (*Id.* at 2.)  Protective Life deposited $107,649.45 with the Court on June 4, 2012, and was thereby "discharged from any further liability with respect to, affecting, or in any way arising out the Policy."  (*Id.*; Receipt, June 4, 2012, Docket No. 26.)

On June 26, 2012, the Court granted Protective Life's unopposed motion to dismiss, and dismissed Kridner's counterclaim with prejudice.  (Order, June 26, 2012, Docket No. 29.)  Judgment was entered regarding Kridner's counterclaim the same day. (J., June 26, 2012, Docket No. 30.)

Protective Life submitted an affidavit that it has incurred $10,665 in attorneys' fees and costs in this action, and now requests that the Court award those fees to be paid out of the Policy's proceeds.[3]  (Jorissen Aff. ¶¶ 4-5.)  Protective Life also submitted invoices itemizing most of the requested fees.  (First Aff. of Andrew J. Budish ¶ 2, Ex. A, July 20, 2012, Docket No. 35.)

## ANALYSIS

## I.   ALLOWANCE OF ATTORNEYS' FEES AND COSTS

"Interpleader is a procedural device that allows a party holding money or property, concededly belonging to another, to join in a single suit two or more parties asserting mutually exclusive claims to the fund.  In this way the stakeholder is freed from the threat of multiple liability."  *Wittry v. Nw. Mut. Life Ins. Co.*, 727 F. Supp. 498, 499-500 (D. Minn. 1989).  "[A] disinterested stakeholder who is threatened with multiple liability

---

[3] As an initial matter Kridner argues that, because Protective Life's motion for attorneys' fees was made more than thirty days after judgment was entered dismissing Kridner's counterclaim, it is untimely and an award of fees is therefore inappropriate.  Local Rule 54.3 provides that where attorney's fees are sought, "the party seeking an award of fees shall . . . [w]ithin 30 days of entry of judgment in the case, file and serve an itemized motion for the award of fees."  D. Minn. LR 54(b)(1).  Judgment was entered on June 26, 2012.  Protective Life filed its motion for attorneys' fees on July 20, 2012, well within the thirty day period provided by the Local Rules.  (Mot. for Att'y Fees and Costs, July 20, 2012, Docket No. 31.)  Protective Life's motion is not untimely.

and who interpleads the claimants" should ordinarily not bear the expenses it incurs in bringing the action, and "is entitled to attorneys['] fees." *Equitable Life Assurance Soc'y of U.S. v. Miller*, 229 F. Supp. 1018, 1020 (D. Minn. 1964); *see Hunter v. Fed. Life Ins. Co.*, 111 F.2d 551, 557 (8th Cir. 1940).[4]  The rationale for allowing fees to be recovered in an interpleader action "is that it would be inequitable to make the disinterested stakeholder bear the expense of guarding against vexatious and multiple litigation and the interpleader action benefits the claimants by facilitating an early determination regarding ownership of the claimed funds." *Allianz Life Ins. v. Agorio*, 852 F. Supp. 2d 1163, 1168 (N.D. Cal. 2012).[5]

"To recoup attorneys' fees and costs, a court must find (1) a disinterested stakeholder, (2) who has conceded liability, (3) has deposited the disputed funds into court, and (4) has sought a discharge from liability." *Landmark Chems., SA v. Merrill Lynch & Co.*, 234 F.R.D. 62, 63 (S.D.N.Y. 2005) (citing *Septembertide Publ'g, B.V. v.*

---

[4] *See also Prudential Ins. Co. of Am. v. Boyd*, 781 F.2d 1494, 1497 (11th Cir. 1986) ("In an interpleader action, costs and attorneys' fees are generally awarded, in the discretion of the court, to the plaintiff who initiates the interpleader as a mere disinterested stake holder."); *Schirmer Stevedoring Co. v. Seaboard Stevedoring Corp.*, 306 F.2d 188, 194 (9th Cir. 1962) ("We think that the proper rule, in an action in the nature of interpleader, is that the plaintiff should be awarded attorney fees for the services of his attorneys in interpleading."); *Mass. Mut. Life Ins. Co. v. Sanders*, 787 F. Supp. 2d 628, 641 (S.D. Tex. 2011) ("[I]t is 'generally' appropriate to award a plaintiff who initiates an[] interpleader costs and attorney fees . . . ."); *Landmark Chems., SA v. Merrill Lynch & Co.*, 234 F.R.D. 62, 63 (S.D.N.Y. 2005) ("Attorneys' fees are commonly awarded to an innocent stakeholder who successfully initiates a suit as an interpleader . . . .").

[5] *See also Greenberg v. Equitable Life Assurance Soc'y of U.S.*, 167 F. Supp. 112, 118 (D. Minn. 1958) ("[T]he initiator of a strict interpleader action is entitled to attorney's fees for litigating a dispute.  The propriety of such a rule is evident.  Where the mere holder of a disputed fund has no interest in the fund, but is only interested in seeing that the proper party receives it, the expense of establishing the proper recipient obviously should not be borne by the stakeholder.").

*Stein & Day, Inc.*, 884 F.2d 675, 683 (2d Cir. 1989)).   Here it is undisputed that Protective Life meets these requirements.  Protective Life is a disinterested stakeholder in the Policy's proceeds and has conceded its liability to pay the funds to one of the claimants.  (*See* Mot. to Deposit Funds at 2.)  Additionally, Protective Life has deposited the funds and the Court has discharged Protective Life "from any further liability with respect to, affecting, or in any way arising out of the Policy."  (Order at 2, May 30, 2012, Docket No. 24.)

Kridner, however, argues that attorneys' fees should not be awarded in this case because the Daughters' claims to the Policy's proceeds were frivolous, and therefore Protective Life could have resolved the competing claims without filing an interpleader action.  In this case, the Court previously determined that an interpleader action was appropriate when it granted Protective Life's motion to deposit funds, which explicitly indicated that interpleader was sought because "Protective has received adverse, conflicting claims to [the Policy's proceeds]."  (Mot. to Deposit Funds at 2.)  Therefore the Court has already concluded that there were competing claims to the funds sufficient to maintain an interpleader at the time Protective Life filed the action.  (Order, May 30, 2012, Docket No. 24.)  Where "all parties have already consented to the principal sum of money being deposited in the court registry[,]" this means, by definition "that there is a dispute over the interpleaded funds" sufficient for the Court to exercise jurisdiction over the interpleader action.  *Irwin v. Principal Life Ins. Co.*, 404 F. Supp. 2d 1271, 1279

(D. Kan. 2005).[6]  Kridner's argument about the merits of the Daughters' claims therefore

goes to the propriety of an interpleader action in the first instance, and not to whether the

interpleading plaintiff is entitled to attorney fees.  *See id.*  ("[The claimant] suggests that

there is no bona fide dispute between the parties for the insurance proceeds, as she is

clearly entitled to them.  This is not an appropriate challenge to a motion for attorneys'

fees, but instead an argument against allowing for interpleader.").  If Kridner desired to

challenge Protective Life's use of interpleader, the time to raise those arguments was in

response to Protective Life's motion to deposit funds.  But Kridner did not oppose

Protective Life's motion to deposit funds.[7]

---

[6] *See also Allianz Life Ins.*, 852 F. Supp. 2d at 1167-68 (allowing a stakeholder to recover attorneys' fees after determining that interpleader was appropriate, where defendants contested the existence of conflicting claims to the funds only with respect to the propriety of an award of attorneys' fees and not with respect to whether interpleader was appropriate in the first instance).

[7] Kridner also argues that attorneys' fees should not be awarded to Protective Life because Kridner and the Daughters' competing claims to the proceeds of the Policy are the types of claims that arise in the ordinary course of Protective Life's business.  Some courts have adopted this rationale, and denied an award of attorneys' fees where the stakeholder is an insurance company because resolving competing claims is part of the ordinary course of business for an insurance company and awarding attorneys' fees in an interpleader action would allow insurance companies to transfer those ordinary business expenses to the claimants.  *See, e.g., Aetna U.S. Healthcare v. Higgs*, 962 F. Supp. 1412, 1414-15 (D. Kan. 1997); *Minn. Mut. Life Ins. Co. v. Gustafson*, 415 F. Supp. 615 (N.D. Ill. 1976).  The Eighth Circuit has not, however, adopted this rule, and does not bar the recovery of attorneys' fees where the stakeholder is an insurance company.  *See N.Y. Life Ins. Co. v. Miller*, 139 F.2d 657, 658 (8th Cir. 1944) ("If the [insurance company] had brought an independent suit in interpleader, it would have been entitled to an allowance for attorneys' fees to be determined by the District Court and paid out of the fund in Court."); *Hunter*, 111 F.2d at 557; *Life Ins. Co. of N. Am. v. Sessing*, Civ. No. 09-2269, 2010 WL 2010729, at *2 (D. Minn. May 19, 2010); *Equitable Life Assurance Soc'y of U.S.*, 229 F. Supp. at 1020.  Therefore, the Court finds that even though Protective Life is an insurance company, it is properly entitled to an award of attorneys' fees under these circumstances.  Additionally, the Court notes that entities other than insurance companies that employ the interpleader remedy also use the remedy to shift business costs involving uncertain claims to the court, and Kridner has not presented any compelling reason to treat insurance companies differently than other interpleading plaintiffs.  *See Tower Life Ins. Co. v. Tucker*, 557 F. Supp. 2d 1287, 1292 (D.N.M. 2007) ("The Court also does not believe that there is any sound reason to

(Footnote continued on next page.)

Furthermore, even if the Court were inclined to reconsider its decision that interpleader was appropriate, it would still find that the competing claims of Kridner and the Daughters were sufficient to support an interpleader action.  A stakeholder need not believe that all of the claims asserted against a fund are meritorious in order to maintain an interpleader action.

> The jurisdiction of a federal court to entertain a bill of interpleader is not dependent upon the merits of the claims of the defendants.  It is our opinion that a stakeholder, acting in good faith, may maintain a suit of interpleader for the purpose of ridding himself of the vexation and expense of resisting adverse claims, even though he believes that only one of them is meritorious. . . . Lawsuits also often prove to have been groundless; but no way has been discovered of relieving a defendant from the necessity of a trial to establish that fact."

*Hunter*, 111 F.2d at 556 (citations and internal quotation marks omitted).[8]  A stakeholder acting in good faith "need not sort out the merits of conflicting claims as a prerequisite to interpleader," but must have "a real and reasonable fear of exposure to double liability or the vexation of conflicting claims."  *Michelman v. Lincoln Nat'l Life Ins. Co.*, 685 F.3d 887, 894 (9th Cir. 2012).

_____
(Footnote continued.)

exclude insurance companies from the general rule that plaintiffs in interpleader actions may be awarded their fees and costs from the funds deposited with the court. . . . [A]ny corporation or institution that uses interpleader could be subject to the same criticism, and litigants often shift costs to society. . . . To single out insurance companies as opposed to other companies or institutions that employ the interpleader procedures seems to display a hostility towards insurance companies that is unwarranted and does not recognize the contribution they make to the public weal.").

[8] *See also Dakota Livestock Co. v. Keim*, 552 F.2d 1302, 1308 (8th Cir. 1977) (explaining that the district court's jurisdiction over interpleader actions "extends to potential claims as well as to claims that have actually been made when suit is filed" and finding jurisdiction over an interpleader action based on a conflicting claim of a defendant even though he had "not as yet asserted any liability" as to the fund, but had also "not admitted that no such liability exists").

Here, the Daughters were represented by an attorney, made a claim for the Policy's proceeds, refused to settle the dispute with Kridner or withdraw their claims, and raised potential questions of whether California (the place of Thomas Kridner's death) or Idaho (the place of the Kridners' divorce) law governed entitlement to the Policy's proceeds. Additionally, Kridner was untruthful in her original claim for the Policy's proceeds when she stated that she was Thomas Kridner's wife. This lack of truthfulness could have raised additional concerns about the validity of either Kridner's or the Daughters' claims to the Policy's proceeds. These facts demonstrate that Protective Life could have had a reasonable fear of exposure to double liability based on the competing claims of Kridner and the Daughters. *See Sun Life Assurance Co. of Canada v. Grose*, 466 F. Supp. 2d 714, 717 (W.D. Va. 2006) (finding a sufficient basis for the filing of an interpleader action where, although the claim of one of the defendants was "thin," "she was the widow of the decedent and his prior primary beneficiary and was represented by an attorney, who wrote [the insurance company] that she questioned the subsequent beneficiary designation"). Although Protective Life indicated that it did not believe that California law applied in a manner which substantiated the Daughters' claims, under the standard governing interpleaders, Protective Life was not required to believe that the Daughters would ultimately succeed on their claims before filing an interpleader action; rather it was enough for Protective Life to have a reasonable fear of exposure to double liability. Because the Court previously found, and continues to find, that an interpleader action was appropriate, and attorneys' fees are ordinarily allowed in such actions, the

Court concludes that Protective Life is entitled to an award of attorneys' fees and costs reasonably expended in bringing this action.

## II.   REASONABLE ATTORNEYS' FEES

Having determined that an award of attorneys' fees is appropriate in this case, the Court must go on to determine whether an award in the amount of $10,665[9] requested by Protective Life is reasonable.  An award of attorneys' fees is not without limitation in the interpleader context.  "The amount of fees to be awarded in an interpleader action is committed to the sound discretion of the district court."  *Trs. of Dirs. Guild of Am.- Producer Pension Benefits Plans v. Tise*, 234 F.3d 415, 426 (9th Cir. 2000).  In interpleader actions, the broad rule governing an award of attorneys' fees is reasonableness.  *See Rhoades v. Casey*, 196 F.3d 592, 603 (5th Cir. 1999); *Grose*, 466 F. Supp. 2d at 717.  In determining what fees are reasonable courts consider, among other factors, the complexity of the case, "whether the stakeholder performed any unique services for the claimant or the court," whether either the stakeholder or claimants "improperly protracted the proceedings," and whether any of the services rendered benefitted the stakeholder.  *Smith Barney, Harris Upham & Co. v. Connolly*, 887 F. Supp. 337, 346 (D. Mass. 1994) (internal quotation marks omitted).

In general, interpleader should be "a simple, speedy, efficient, and economical remedy," and bringing an action for interpleader "does not usually involve any great amount of skill, labor or responsibility."  *Hunter*, 111 F.2d at 557.  Consequently, "the

---

[9] Of the $10,665 requested, $10,150 represent attorneys' fees and $515 represent costs incurred from the filing fee and service charges.

amount allowed for [attorneys'] fees should be modest" and should not "seriously deplet[e] the fund deposited in court by a stakeholder." *Id.*; *see also Equitable Life Assurance Soc'y of U.S.*, 229 F. Supp. at 1021. "Moreover, because the attorneys' fees are paid from the interpleaded fund itself, there is an important policy interest in seeing that the fee award does not deplete the fund at the expense of the party who is ultimately deemed entitled to it." *Tise*, 234 F.3d at 427.

## A.    Redaction

The Court will first determine whether Protective Life's submitted invoices are sufficient to establish that the fees it seeks are reasonable. The stakeholder seeking fees has the burden of proving that the fees sought are reasonable. *See id.*; *Pressman v. Estate of Steinvorth*, 886 F. Supp. 365, 368 (S.D.N.Y. 1995).[10] And any "[u]ncertainties in a fee application due to nonspecific entries are resolved against the applicant." *In re OEM Indus. Corp.*, 135 B.R. 247, 251 (Bankr. W.D. Pa. 1991). In an interpleader action, "[f]ees may be awarded to cover the costs of preparing, filing and litigating the interpleader action, but they may not be awarded to . . . cover costs regarding any portion of the interpleader action in which the stakeholder was an interested party." *Pressman*, 886 F. Supp. at 367 (citations omitted). Therefore, it is important that stakeholders seeking fees provide enough detail in their affidavits to allow the Court to ascertain what particular legal matter the billed activity concerned. *See id.*

---

[10] *Cf Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) (stating that in the context of statutory attorney fees "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates").

Here, the Court finds that although many of Protective Life's invoice entries contain sufficient detail to allow the Court to conclude that the fees sought in relation to those entries are reasonable, other entries contain substantial redactions which prevent the Court from assessing reasonableness. "Redaction of billing records is acceptable so long as the court has sufficient information to form an opinion on the reasonableness of the fees. Redacted entries must be excluded if they do not provide sufficient information to classify and evaluate the activities and hours expended." *Randolph v. Dimension Films*, 634 F. Supp. 2d 779, 800 (S.D. Tex. 2009). Here, many of the redacted entries produced by Protective Life fail to provide adequate information to allow the Court to evaluate the reasonableness of the activities and the hours expended.[11] *See Harleysville Ins. Co. v.*

---

[11] Protective Life contends that it was required to redact its invoices in order to protect attorney client and work product privilege. It is true that "claimants wish[ing] to preserve any applicable privilege or protection attaching to its invoices . . . may rest on its redacted version of such invoices." *Nationwide Payment Solutions, LLC v. Plunkett*, 831 F. Supp. 2d 337, 339 (D. Me. 2011). But, by submitting redacted versions, the claimant "choose[s] to take the risk that the court will decline to award the full requested amount on the basis of its partial failure to meeting its burden of justifying its fee request." *Id.*; *see also Tomlinson v. Combined Underwriters Life Ins. Co.*, No. 08-CV-259, 2009 WL 2392950, at *1-2 (N.D. Okla. July 29, 2009) ("Since the redacted billing statements do not provide sufficient support for the fee request, the fee request may be denied to the extent that it relies upon the redacted billing entries . . . AMR is not **required** to produce any additional information in support of its attorney fee request. AMR is, however, advised that the billing statement[s] submitted in support of its motion for attorney fees are insufficient to support its request for an award of fees." (emphasis in original)). Fee seekers do, however, have the option of submitting unredacted versions of its invoices for examination by the court and opposing counsel. *See Nationwide Payment Solutions*, 831 F. Supp. 2d at 338-39. Although by doing so the fee claimant waives "any applicable privilege or protection," courts have construed such waivers narrowly as applying only as to the claimant's opponent and the fee invoices themselves. *Id.* at 339 & n.1 (citing *Aecon Bldgs., Inc. v. Zurich N. Am.*, C07-832, 2008 WL 2434205, at *2 n.1 (W.D. Wash. June 13, 2008); *Educ. Credit Mgmt. Corp. v. Cent. Equip. Co.*, 477 F. Supp. 2d 788, 794 (E.D. Ky. 2007)); *see also 2002 Irrevocable Trust for Richard C. Hvizdak v. Shenzhen Dev. Bank, Co.*, No. 2:08-cv-556, 2011 WL 4112776, at *7 (M.D. Fla. Sept. 15, 2011) (stating that rather than filing invoices redacted to the point of obscuring the court's ability to assess reasonableness "[i]f Defendant

(Footnote continued on next page.)

*Physical Distrib. Servs., Inc.*, Civ. No. 10-2591, 2012 WL 601036, at *2 (D. Minn. Feb. 23, 2012) (noting that the court was "unable to evaluate the reasonableness of each and every entry included in [the] invoices given [the] redaction of various entries[,]" and declining to award such fees concluding that they corresponded to the attorney's voluntary reduction in his request for fees).[12]   For example, Protective Life's invoices contain several entries for "Review correspondence."   These entries do not identify the nature of the correspondence "or otherwise provide sufficient information to assess whether the time expended was reasonable."   *See Randolph*, 634 F. Supp. 2d at 800 (reducing redacted entries which stated only "E-mail correspondence").   The Court's review of Protective Life's invoices indicates that sixteen entries fail to provide sufficient information for the Court to assess the reasonableness of the fees requested, and therefore the following fees will not be allowed:

| Date | Entry | Amount |
|------|-------|--------|
| 03/01/2012 | Review correspondence | $70.00 |
| 03/01/2012 | [Entirely redacted] | $175.00 |
| 03/01/2012 | Telephone conference | $140.00 |
| 03/01/2012 | Review additional documents | $70.00 |
| 03/02/2012 | Telephone conference | $140.00 |
| 03/02/2012 | Review email correspondence | $35.00 |

_____

(Footnote continued.)

wanted to maintain the confidentiality of the information, Defendant should have filed a motion to submit an unredacted copy of the billing records under seal").

[12] *See also 2002 Irrevocable Trust for Richard C. Hvizdak*, 2011 WL 4112776, at *7 (reducing an attorneys' fee award by twenty percent where several time entries with redacted information did "not allow the Court to determine whether such tasks are compensable and/or related to the present case").

| | | |
|---|---|---|
| 03/05/2012 | Email correspondence | $70.00 |
| 03/07/2012 | [Entirely redacted] | $105.00 |
| 03/07/2012 | Email correspondence | $35.00 |
| 03/21/2012 | Confer with staff | $70.00 |
| 03/27/2012 | Review correspondence | $175.00 |
| 04/17/2012 | Email correspondence | $70.00 |
| 04/26/2012 | Telephone conference | $40.00 |
| 04/30/2012 | Meeting with Jorissen | $80.00 |
| 06/02/2012 | Review correspondence | $70.00 |
| 06/27/2012 | Review and analyze | $80.00 |

(*See* First Budish Aff., Ex. A.)  Additionally, redaction in three other entries prevents the Court from assessing the reasonableness of a portion of the hours claimed.  Therefore, the Court will reduce the hours billed on May 4, 2012, to 0.9 and correspondingly reduce the fees requested by $70, reduce the hours billed on May 7, 2012, to 1.1 and reduce the corresponding fee by $175, and reduce the hours billed on June 15, 2012, to 0.3 and reduce the corresponding fee by $60.  (*See id.*)  The Court's will reduce Protective Life's fee request by a total of $1,730 because of the redacted entries.  *See Tise*, 234 F.3d at 427 ("Where the documentation [of fees] is inadequate, the district court is free to reduce an applicant's fee award accordingly.").

## B.    Fees Expended on Behalf of Protective Life's Interests

The Court must next determine whether any of the attorneys' fees requested by Protective Life were incurred solely in defending Protective Life's own interests.  Fees are awarded in interpleader actions "to compensate a totally disinterested stakeholder who [has] been . . . subjected to conflicting claims through no fault of his own."  *Ferber*

*Co. v. Ondrick*, 310 F.2d 462, 467 (1st Cir. 1962). Therefore a stakeholder is not entitled to attorneys' fees where it "has an interest in the subject matter of the dispute." *Greenburg v. Equitable Life Assurance Soc'y of U.S.*, 167 F. Supp. 112, 118 (D. Minn. 1958); *see also Sun Life Assurance Co. of Canada v. Sampson*, 556 F.3d 6, 8 (1st Cir. 2009). An award of attorneys' fees is inappropriate where, for example, the stakeholder contests ownership of the fund, or disputes the correct amount of its own liability. *See Mass. Mut. Life Ins. Co. v. Sanders*, 787 F. Supp. 2d 628, 641 (S.D. Tex. 2011).

The prohibition on the recovery of fees expended in the stakeholder's own interest usually extends to fees incurred in defending against a counterclaim brought by a claimant against the stakeholder, as such fees are typically expended solely to protect the stakeholder's own interest. *See Sun Life Assurance Co. of Canada v. Bew*, 530 F. Supp. 2d 773, 776 (E.D. Va. 2007) ("Generally, attorneys' fees will be awarded only for efforts associated with the interpleader action itself, and not for any efforts expended by . . . counsel in preparing to defend a potentially collateral claim or counterclaim."). For example, where a claimant responds to an interpleader action by asserting a counterclaim for a collateral cause of action against the stakeholder – such as a breach of fiduciary duty – attorneys' fees incurred by the stakeholder in responding to that claim are not recoverable because such fees were expended in the stakeholder's own interests and are fees not associated with the interpleader action itself. *See id.* at 777 (refusing to award fees for "efforts expended in regard to the potential collateral claim [that] were not directly related to the interpleader action itself"); *Grose*, 466 F. Supp. 2d at 717 (refusing to award fees expended in defending against a counterclaim filed against the stakeholder

which "did not relate to the ownership of the fund"). However, counterclaims which concern a stakeholder's "failure to resolve its investigation in [the claimants] favor and pay out the life insurance proceeds to [the claimant]" are not "truly independent of who [i]s entitled to the life insurance proceeds, which is the issue the interpleader action was brought to settle." *Prudential Ins. Co. of Am. v. Hovis*, 553 F.3d 258, 264-65 (3d Cir. 2009). Therefore, fees expended in responding to counterclaims which essentially challenge only the propriety of an interpleader action are recoverable by a stakeholder, as such fees are directly tied to the interpleader action itself.

The Court finds that the counterclaim brought by Kridner in this action was of the latter type, and fundamentally challenged only the propriety of Protective Life bringing an interpleader action. In her counterclaim, Kridner alleged that Protective Life breached its contract of insurance when it failed to pay the proceeds of the Policy to Kridner. (Answer & Countercl., at 5.) Because Kridner's counterclaim related solely to the ownership of the fund, in which Protective Life has no interest, the Court finds that it is proper for Protective Life to recover the attorneys' fees it reasonably expended in defending against Kridner's counterclaim.

However, the prohibition on the recovery of fees expended in pursuing the stakeholder's own interests has also been extended to fees sought which were incurred solely in the recovery of fees. *Allianz Life Ins.*, 852 F. Supp. 2d at 1170 (declining to award fees for "costs solely related to the pursuit of Plaintiff's interests (i.e., the recovery

of its fees)").   Here, Protective Life seeks $1,212[13] incurred in bringing the present motion for fees.   Because these fees were incurred solely in the pursuit of Protective Life's own interest in the fund, the Court will not award these fees.

### C.      Whether Kridner or Protective Life Protracted the Proceedings

Although awarding fees is the common practice in interpleader action, courts may deny or reduce a requested reward where the stakeholder has been dilatory in bringing and litigating the interpleader action.  *See Liberty Life Assurance Co. of Boston v. Ramos*, No. CV-11-156, 2012 WL 10184, at *3 (D. Ariz. Jan. 3, 2012); *Smith Barney, Harris Upham & Co.*, 887 F. Supp. at 346.   The Court must therefore determine whether Protective Life unduly complicated or protracted the litigation.

First, the Court finds that Protective Life protracted the litigation to some extent by failing to contemporaneously file its interpleader complaint and seek leave to deposit the Policy's proceeds with the Court.   "The requirement that the stakeholder deposit money or property or the giving of a bond in lieu thereof is a condition precedent to obtaining interpleader jurisdiction."  *Kitzer v. Phalen Park State Bank of St. Paul*, 379 F.2d 650, 651 (8th Cir. 1967).   Although a disinterested stakeholder is not required to simultaneously file its interpleader action and deposit funds with the court, *see Wayzata Bank & Trust Co. v. A & B Farms*, 855 F.2d 590, 592 (8th Cir. 1988), filing a motion for the deposit of the funds at the time the complaint is filed "will expedite the process of

---

[13] Protective Life indicated that it would request an additional $500 if it was required to appear at a hearing on this matter.  Because no hearing was held, the Court will not consider this request.

getting the insurer dismissed from the litigation with minimal incursion of costs and fees." David L. Leitner, Reagan W. Simpson, and John M. Bjorkman, *Law and Practice of Insurance Coverage Litigation* §§ 13:10, 13:24 (2012). Here, Protective Life chose to file its complaint and subsequently file a motion to deposit the Policy's proceeds with the Court, incurring additional fees.

Even if Protective Life's choice to file a motion to deposit funds after filing its complaint in and of itself was reasonable "[o]nce it began this [interpleader] action, nothing prevented [the stakeholder] from seeking to deposit the stake with the court." *See Life Ins. Co. of N. Am. v. Sessing*, Civ. No. 09-2269, 2010 WL 2010729, at *2 (D. Minn. May 19, 2010). Here, instead of simply filing a motion to deposit funds with the Court, Protective Life sought multiple times to reach a stipulation with Kridner. Although a stipulation may have ultimately reduced fees and costs in the litigation overall, the Court considers fees spent repeatedly attempting to reach a stipulation after Kridner's attorneys had rebuffed such efforts to be somewhat unreasonable. Additionally, Protective Life's billing records reveal that Protective Life was simultaneously pursuing a stipulation while preparing the motion to deposit the funds and dismiss Kridner's counterclaim, suggesting that fees and costs would not have been substantially reduced had Kridner agreed to the stipulation.[14]   The Court finds that,

---

[14] Based on the procedural history of this case, the Court is aware that Kridner is not blameless and certainly bears some fault for the extent of litigation, as demonstrated by her filing of a counterclaim and refusal to stipulate to motions which she ultimately did not oppose. The Court has taken this fault into consideration in ordering only a small percentage reduction in Protective Life's requested fees.

although Protective Life has acted in good faith throughout these proceedings, its tactics have unnecessarily increased the overall amount of fees expended in the litigation.

Finally the Court notes that this case involves a relatively straightforward interpleader proceeding, not requiring any unique skills or a substantial expenditure of time.  *See Johnson v. Electrolux Corp.*, 763 F. Supp. 1181, 1189 (D. Conn. 1991) (reducing a requested award of fees from over $7,000 to $1,000 where the "interpleader was simple, requiring no discovery and no complex legal research").[15]  The $10,665 award requested by Protective Life exceeds the amount typically awarded in similar interpleader actions.  *See Landmark Chems., SA*, 234 F.R.D. at 64 (comparing attorneys' fee awards in similar cases to determine an appropriate award); *Life Ins. Co. of N. Am.*, 2010 WL 2010729, at *4 (awarding $6,627 in reasonable attorneys' fees and costs in an interpleader action).[16]  The amount of Protective Life's request in light of the simplicity of the interpleader and awards in similar cases also suggests that an overall reduction in Protective Life's award is appropriate.  Therefore, the Court will apply a fifteen percent reduction to Protective Life's request for attorneys' fees.

---

[15] *See also Estate of Ellington v. EMI Music Publ'g*, 282 F. Supp. 2d 192, 194 (S.D.N.Y. 2003) ("[T]he typical interpleader claim does not involve extensive or complicated litigation, and thus fees should be relatively modest." (internal quotation marks omitted)).

[16] *See also Am. Gen. Life Ins. Co. v. Estate of Jeffrey M. Johnson*, Civ. No. 10-01593, 2010 WL 5313550, at *2 (D. Colo. Dec. 16, 2010) (awarding $6,156); *Columbus Life Ins. Co. v. Hill*, No. 2:09-cv-0947, 2010 WL 3717285, at *3 (E.D. Cal. Sept. 16, 2010) (awarding $2,573); *Allstate Life Ins. Co. v. Dall*, No. 2:07-cv-02264, 2008 WL 2682530, at *2 (E.D. Cal. June 30, 2008) (awarding $5,725.80); *Redflex Traffic Sys., Inc. v. Network Elec., Inc.*, Civ. No. 05-2702, 2006 WL 2265159, at *4 (D. Minn. Aug. 7, 2006) (awarding $5,467).

After subtracting $1,730 for inappropriate redaction and $1,212 associated with bringing the instant motion, Protective Life's request for attorneys' fees is $7,723.  A fifteen percent reduction in this request results in a total award of fees and costs of $6,564.55.  The Court finds that this fee is reasonable, and strikes an appropriate balance between the right of Protective Life to recover fees and costs and the true beneficiary's right to the full amount of the interpleaded fund.  *See Hunter*, 111 F.2d at 557.

### III.   AWARDED OUT OF POLICY PROCEEDS

Finally, the Court must determine whether the attorneys' fees and costs awarded to Protective Life should be deducted from the Policy's proceeds deposited with the Court.  It is the typical practice of federal courts to order that an award of attorneys' fees to a disinterested shareholder be paid out of the interpleaded fund.  *See id.*; *Tise*, 234 F.3d at 427.[17]   However, courts also have the discretion to "tax the losing claimant directly" when the claimant's "conduct justifies doing so."  *Prudential Ins. Co. of Am. v. Boyd*, 781 F.2d 1494, 1498 (11th Cir. 1986).  Typically a finding of bad faith is required before the court would require the losing claimant to pay the interpleading plaintiff's fees and costs.  *See id.*

Kridner has failed to identify any reason why the typical practice of awarding fees out of the interpleaded fund should not be followed in this case.  Kridner has presented

---

[17] *See also Prudential Ins. Co. of Am.*, 781 F.2d at 1498; *Liberty Life Assurance Co. of Boston*, 2012 WL 10184, at *6; *Mass. Mut. Life Ins. Co. v. Sanders*, 787 F. Supp. 2d at 642; *Tower Life Ins. Co.*, 557 F. Supp. 2d at 1293; *Minn. Mut. Life Ins. Co. v. James*, 202 F. Supp. 243, 246 (W.D. Mo. 1962).

no evidence and has not argued that the Daughters' acted in bad faith in submitting their claims to the Policy's proceeds. The Court cannot discern any reason why Protective Life's award of fees should be delayed in this case until the true claimant has been determined. Additionally, to the extent Kridner believes she is the rightful claimant to the Policy's proceeds, nothing in this order will prevent her from later seeking to recover the fees paid out of the proceeds from the Daughters. *See United Bank of Denver, Nat'l Ass'n v. Oxford Props., Inc.*, 683 F. Supp. 755, 757 (D. Colo. 1988) ("[A]warding the plaintiff its attorney's fees out of the Fund does not prevent the successful defendant from trying to recover from the unsuccessful claimant the amount paid out of the Fund to the plaintiff.").[18] Therefore, the Court finds that Protective Life's fees and costs should be paid out of the Policy's proceeds deposited with the Court.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Attorneys' Fees and Costs [Docket No. 31] is **GRANTED in part** and **DENIED in part**.

1.       Plaintiff's request for attorneys' fees and costs is **GRANTED** in the amount of $6,564.55.

---

[18] Furthermore, to the extent Kridner argues that **she** is entitled to attorneys' fees from Protective Life, the Court notes that Kridner has presented no evidence in support of this claim. First, Kridner did not bring a motion seeking attorneys' fees, and has not identified any amount or type of fees she seeks in connection with this action. Second, Kridner has failed to present evidence that Protective Life's conduct in this matter was improvident, vexatious, or otherwise in bad faith such that an award of attorneys' fees against Protective Life could be appropriate. *See Murphy v. Travelers Ins. Co.*, 534 F.2d 1155, 1164 (5th Cir. 1976).

2.      The Clerk is **DIRECTED** to disburse a check from the Registry of Court

for $6,564.55 to plaintiff within fourteen (14) days of the date of this Order.

DATED:  March 27, 2013                          s/ John R. Tunheim
at Minneapolis, Minnesota.                       JOHN R. TUNHEIM
                                            United States District Judge